## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREA LAURA JACOBS,** | **CASE NO. 1:15-cv-02457-YK-GBC** |
| **Plaintiff,** | **(JUDGE KANE)** |
| | **MAGISTRATE JUDGE COHN** |
| **v.** | |
| **CAROLYN W. COLVIN,** **COMMISSIONER OF SOCIAL** **SECURITY,** | **REPORT AND** **RECOMMENDATION TO DENY** **PLAINTIFF'S APPEAL** |
| **Defendant.** | **Doc. 1, 15, 16, 17, 18, 19, 20, 21, 22,** **23** |

## REPORT AND RECOMMENDATION

### I.   Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Plaintiff for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"), and Social Security Regulations, 20 C.F.R. §§404 *et seq.*, 416 *et seq.* (the "Regulations").

Plaintiff was developmentally delayed, and began receiving child disability benefits when she was two years old. Doc. 16. By eighth grade, she functioned "commensurate with her chronological age" and her IQ tested in the average range. (Tr. 303, 310). The Bureau of Disability Determination terminated Plaintiff's benefits when it redetermined her eligibility under adult rules after she turned eighteen years old. Doc. 16.

The relevant period runs from June 20, 2012 through May 15, 2014, the date of the administrative law judge ("ALJ") decision, when she was twenty years old. Doc. 16.

Plaintiff carried diagnoses of asthma and kidney stones, but received no treatment for asthma or kidney stones and made no complaints to medical providers about asthma or kidney stones during the relevant period. Doc. 16. The ALJ reasonably found that neither asthma nor kidney stones disabled Plaintiff between June of 2012 and May of 2014. Doc. 16. Plaintiff treated with a psychiatrist for medication management on a declining dose of medications through May of 2013 for attention deficit-hyperactivity disorder ("ADHD"), obsessive-compulsive disorder ("OCD"), and learning disorder by history. Doc. 16.  She reported few symptoms, exhibited normal mental findings, and stopped treating entirely for a year. Doc. 16. She stopped taking Adderall for ADHD at the beginning of the relevant period and denied obsessions and compulsions at every visit. Doc. 16. She reported stable moods, denied anxiety and depression, and indicated that she got along well with friends, family, and her long-term boyfriend. Doc. 16. Her psychiatrist typically assessed a global assessment of functioning ("GAF") of 60, which indicates only mild symptoms or functional impairment, and two expert psychiatrists who reviewed Plaintiff's file indicated that she could perform simple, unskilled work. Doc. 16. Plaintiff reported in support of her claims for benefits that she had severe symptoms and additional diagnoses, like bipolar disorder and schizophrenia, but these reports were contradicted by the diagnoses in her medical records, her reports in the medical records,

normal observations on mental status examination, conservative treatment with no hospitalizations throughout and no treatment whatsoever for one year of the relevant period, and the two medical experts who opined she could do light work. Doc. 16. No medical opinion supports Plaintiff's claims. Doc. 16.

The statements Plaintiff made in support of her application for benefits support her claim, but the Regulations do not require the ALJ to accept those statements. *See* 20 C.F.R. §404.1529. If the ALJ identifies factors that contradict those statements, then the ALJ may reject them. *Id.* The Regulations allow the ALJ to find that conservative treatment, an absence of complaints in medical records, normal mental status findings and average IQ, and multiple medical expert opinions contradict Plaintiff's statements to the agency and to the Court. *Id.* Plaintiff had diagnosed medical impairments, but those impairments do not mean she is disabled. *See Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) (There is no "presumption that a mere diagnosis…renders an applicant eligible for benefits under the Social Security Act"). Plaintiff bears the burden to produce evidence that demonstrates she is disabled, and the only evidence that she was disabled are statements made to the agency and the Court, which the ALJ properly discounted. 42 U.S.C.A. § 1382c(a)(3)(H)(i). Plaintiff failed to produce credible evidence of disability.

The Court is not unsympathetic. Plaintiff suffers from medical conditions which limit her and make it more difficult for her to find a job. *Townsend v. Sec'y of Health, Ed. & Welfare*, 325 F. Supp. 982, 986 (E.D. Ky. 1971) (despite "sympathy for claimants who

have worked as laborers for many years and who have physical ailments which cause them discomfort," claimants bear the "burden, however, of proving their entitlement to benefits under the Act"). However, the Act does not award disability benefits to individuals who cannot get hired for a job. *Reed v. Comm'r of Soc. Sec.*, No. 08-2072, 2009 WL 1106576, at *1 (C.D. Ill. Apr. 3, 2009), *report and recommendation adopted*, No. 08-CV-2072, 2009 WL 1106577 (C.D. Ill. Apr. 23, 2009) ("one can sympathize with Plaintiff's difficulties with finding a job," but if "jobs exist which a claimant could perform, he will not be entitled to disability benefits") (internal citations omitted); *Fields v. Celebrezze*, 218 F. Supp. 334, 337 (E.D. Ky. 1963) ("impairments and injuries of great severity have been held insufficient to establish entitlement to the benefits of the Act. The definition of disability for the present purpose is a narrow one and this court is constantly mindful of its obligation to apply the statute as it is drawn, not according as its natural sympathies may lie"). The Act only awards benefits to individuals who cannot perform a job, even the easiest, least demanding job in the economy. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). There may not be any job openings in the easiest, least demanding position, but that is an issue for unemployment programs, not disability. *Schmiedigen v. Celebrezze*, 245 F. Supp. 825, 827 (D.D.C 1965) (Social Security benefits "are not gratuities or matters of grace; they are not public assistance; they are not welfare payments"); *Evans v. Celebrezze*, 237 F. Supp. 1021, 1023 (E.D. Ky. 1965) ("Despite our natural sympathy for the plight of the plaintiff, we have no power or authority to award

unemployment compensation under the guise of disability insurance under the provisions of the Social Security Act here involved"); *Flaten v. Sec'y of Health & Human Servs.,* 44 F.3d 1453, 1465 (9th Cir. 1995) ("Although we sympathize with individuals like Flaten who earnestly believe that their disability prevented their return to work, we cannot disregard the Social Security Act's eligibility requirements"). Unless Plaintiff's medical conditions would make her incapable of performing the easiest, least demanding job in the economy, if she was offered the job, she is not entitled to benefits.

More specifically, the Court must determine whether substantial evidence supports the ALJ's denial of benefits. *See Reed v. Bo*wen, 833 F.2d 1005 (4th Cir. 1987) ("As is not infrequently the case, an appeal of a Social Security case in which the district court has upheld the Secretary's denial of Social Security Disability Insurance benefits wends its way to us heavily laden with sympathetic considerations in favor of the Social Security petitioner. Fortunately or unfortunately, it is not our function to decide appeals as we would have preferred to see them decided if we had been the finder of fact. The fact-finder is the Secretary; if substantial evidence supports the conclusion of the Secretary, the decision should be affirmed") (internal citation omitted); *Bowman v. Heckler*, 706 F.2d 564, 566–67 (5th Cir. 1983) ("Like many of the social security disability benefit cases that come before us, Ms. Bowman's case evokes our sympathy… But our role in reviewing disability determinations by the Secretary is circumscribed by the statute. 42 U.S.C. § 405(g) (Supp. V 1981)…While we need not be hard hearted, we

must be cool tempered: if the Secretary's findings are supported by substantial evidence, they are conclusive") (internal citations omitted). Substantial evidence is a low standard. *Id.* Even if the Court would have decided differently, the Court must uphold the decision unless it was so unreasonable that the Court would direct a verdict in Plaintiff's favor if the issue were before a jury. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Here, the Court would not direct a verdict in Plaintiff's favor if the issue before a jury. *Id.* The Court recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.    Procedural Background

Plaintiff began receiving disability benefits in 1996, when she was two years old. (Tr. 61-68). Her benefits were redetermined under adult rules in June of 2012, and a new application was consolidated with the redetermination. (Tr. 61-68). On June 20, 2012, her benefits ceased. (Tr. 61-68).  Plaintiff requested reconsideration, which was denied on June 3, 2013. (Tr. 77-84). Plaintiff requested a hearing.  (Tr. 85-87). On November 26, 2013, an ALJ held a hearing at which Plaintiff—who was not represented by an attorney—appeared. (Tr. 55-60). The ALJ continued the hearing to January 30, 2014 so that Plaintiff could obtain counsel. (Tr. 55-60, 166). Plaintiff obtained counsel, who was unable to attend the January 30, 2014 hearing, so the hearing was continued. (Tr. 166). On April 2, 2014, the state agency notified Plaintiff of a hearing scheduled for April 22, 2014, and Plaintiff acknowledged receiving the notice on April 14, 2014. (Tr. 53, 167-

86). On April 22, 2014, Plaintiff failed to appear at the hearing, although counsel was present, and the ALJ obtained testimony from a vocational expert. (Tr. 47-52). The ALJ issued a Notice to Show Cause for Failure to Appear, and Plaintiff responded on April 24, 2014 indicating that her mother had surgery on April 22, 2014, she had no transportation or gas money, and her mental impairments prevented her from attending. (Tr. 207). The ALJ found that Plaintiff failed to show good cause, noting that Plaintiff did not report transportation difficulties when she acknowledged she would be at the hearing a week earlier, did not contact her representative or the state agency to inform them she was unable to attend, and that she had attended a previous hearing despite alleged mental difficulties, which were also unsupported by the medical records. (Tr. 38). On May 15, 2014, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 28-46). On November 10, 2015, the Appeals Council declined review, rendering the ALJ decision the "final decision" of the Commissioner. (Tr. 1-9). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On December 22, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On February 25, 2016, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 15, 16). On April 7, 2016, May 27, 2016, October 18, 2016, and November 3, 2016, Plaintiff filed *pro se* briefs in support of the appeal ("Pl. Briefs"). (Docs. 17, 18, 20, 21, 23). On May 11, 2016 and October 25, 2016, Defendant filed briefs in response

("Def. Briefs"). (Docs. 19, 22). On November 11, 2016, the case was referred to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review and Sequential Evaluation Process

To receive DIB or SSI, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *Id*. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment

prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *Id*.  Before step four, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). *Id*.

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A).  Specifically, the Act provides that:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A); 42 U.S.C.A. § 1382c(a)(3)(H)(i).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social*

*Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

## IV.     Relevant Facts in the Record

Plaintiff was born developmentally delayed in 1994, and began receiving child disability benefits when she was two years old. Doc. 16. The Regulations classify Plaintiff as a younger individual throughout the relevant period. (Tr. 40); 20 C.F.R. § 404.1563. Plaintiff has a limited education and no past relevant work. (Tr. 40). Plaintiff was determined to be disabled through June 20, 2012, shortly after she turned eighteen years-old. (Tr. 61-68).  The disability determination is different for children than adults, and when she was reevaluated under the adult rules, the state agency determined that she

was not disabled. (Tr. 61-68).   An ALJ issued a decision on May 15, 2014 that affirmed the state agency decision. (Tr. 28-46).   Thus, the relevant period for this case is from June 20, 2012 through May 15, 2014. Doc. 16.

Plaintiff has submitted various pieces of evidence from 2015 and 2016. Doc. 17, 18, 20, 21, 23; (Tr. 379). For instance, Plaintiff indicates that she attempted to work, but failed, in 2015. Doc. 20, pp. 7. Plaintiff submitted medical records from Good Samaritan Family Practice from September of 2016, indicating that she was pregnant and needed to be excused from work "today." Doc. 21. However, the only issue the Court is deciding is whether Plaintiff was disabled from June 20, 2012 to May 15, 2014. (Tr. 28-46).   If Plaintiff believes that she was disabled in 2015 or 2016, the proper step is to file a new application for benefits. *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001); *Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). This evidence is not material to Plaintiff's disability prior to May 15, 2014, so the Court did not consider it in determining whether substantial evidence supports the ALJ decision. *Id.* Plaintiff asserts that it is "new evidence that support[s] [her] claim/case," but it does not support her claim that she was disabled prior to May 15, 2014. Doc. 20, pp. 8. Plaintiff alleges that the evidence shows that she has "deteriorated." Doc. 23. Even if it shows she has deteriorated, the proper step is to file a new application. This case addresses only whether Plaintiff was disabled before May 15, 2014.

Plaintiff has also submitted evidence from as early as 2002, when she was eight years old. (Tr. 522-25). This evidence supports her claim that she was disabled while receiving benefits, prior to June of 2012, but does not show that she was disabled between June of 2012 and May of 2014. (Tr. 522). She submitted school records, but she was awarded disability benefits while in school, and these records do not apply to the period of time after June of 2012. (Tr. 306). IQ testing in school records indicated that Plaintiff scored in the "average" range. (Tr. 303). In eighth grade, her functioning was "commensurate with her chronological age." (Tr. 310). In early 2011, teachers observed that she was "very smart but when discussing her grades, she often has a nonchalant way and often blames the teachers for her failing grades." (Tr. 332). She was "capable of being much more successful if she would put forth the required efforts." (Tr. 332). Teachers observed some issues with disruption in her classes, but noted that she "fits in socially." (Tr. 332). Plaintiff had "many friends" and was "independent in areas other than school work." (Tr. 340).

Medical records show that, in October of 2010, Plaintiff underwent a psychiatric evaluation at Pennsylvania Counseling Services ("PCS"), with Dr. Karen Medzoyan, M.D.. (Tr. 511). Plaintiff was sixteen years old. (Tr. 511). Dr. Medzoyan indicated that Plaintiff had been treated with psychiatric medications since 2003, had been diagnosed with ADHD at the age of six, had an IEP in school, and was in eleventh grade, but was taking 10th grade Gym and Health because she had skipped those classes the years before

and received poor grades. (Tr. 511). Plaintiff reported being argumentative and oppositional and a history of "tantrums with destruction of property, screaming and yelling and making threats of harm." (Tr. 511). "Previous diagnoses include[d] ADHD, oppositional defiant disorder, obessesive-compulsive disorder, mathematics disorder, reading disorder and rule out schizoaffective disorder." (Tr. 511). Plaintiff denied any psychiatric hospitalizations or suicide attempts. (Tr. 511). Plaintiff reported a history of asthma, kidney stones, and lithotripsy. (Tr. 512). Both of Plaintiff's parents suffered from mental illness and she had been developmentally delayed as an infant. (Tr. 512).

Plaintiff reported "good social skills" and that she had "a lot of friends." (Tr. 521). She was "into sports" and "running daily." (Tr. 521). Plaintiff had "lost 20 pounds" and was "feeling great." (Tr. 520). She had "no" recent "anger incidents" and was "doing great" since starting school. (Tr. 517). She "seem[ed] to have knowledge to control her angry feelings. However, she needs to be careful with certain triggers that appear to be too much for her." (Tr. 517). Mental status examination indicated:

> Andrea is a very tall young lady with good hygiene. She weighs 152 pounds. Her height is 5 ft. 7 in. She makes good eye contact. She is calm, pleasant and cooperative. Her mood is fair with euthymic affect. No suicidal or homicidal ideation. She denies vegetative symptoms of depression or anxiety. She shows insight into the benefit of her medication. She denies psychotic symptoms in five spheres. No paranoid ideation. Her memory is intact, both short-term and long-term. Suboptimal impulse control by history. No tics, tremors or mannerisms on exam.

(Tr. 513). Dr. Medzoyan opined that Plaintiff was "stable on her current medication regimen," which was a combination of Adderall, Seroquel, and Zoloft, instructed Plaintiff

to continue her medications, and opined that she had a global assessment of functioning ("GAF") score of 58. (Tr. 513). The next day, Plaintiff followed-up with her counselor and reported "doing great at school" and "at home." (Tr. 516). The next month, she reported "doing good at school, good grades, no behavior problems." (Tr. 514). She was "playing basketball" and had "no anger incidents." (Tr. 514-15). In November of 2010, Dr. Medzoyan elevated her GAF to 60. (Tr. 510). She had a boyfriend and was getting along with her family. (Tr. 510). Plaintiff continued on the same dose of medication, continued reporting getting along with her boyfriends and boyfriends, did not exhibit any abnormalities on examination, and was passing her classes through the end of 2010 and through the end of eleventh grade in May of 2011, when Dr. Medzoyan instructed her to taper off Zoloft. (Tr. 407-12, 501-08).

Plaintiff treated with her primary care provider in January of 2011 for a cough and December of 2011 for a well-child visit. (Tr. 393-98). Plaintiff was taking Ventolin, Advair, Prevacid, Singulair, and Midol. (Tr. 393). At the well child visit, Plaintiff had "no specific concerns," with "no difficulties with constipation or diarrhea," normal sleep patterns, "generally happy and content, becoming more independent," "gets along with peers and gets along with parents and siblings," "plans on getting job and GED," "denies depression," had run out of advair and singulair "months ago" and was using albuterol less than twice per week, and was following up with a urologist "yearly" for treatment of kidney stones. (Tr. 396). Examination was normal and Plaintiff was instructed to call if

she needed to use albuterol more than twice per week. (Tr. 397). The record contains no evidence of urology treatment during the relevant period. Doc. 16. Plaintiff's mother wrote a letter to the Appeals Council that Plaintiff went to the emergency room for kidney stones in August of 2015, but that is not relevant to whether she was disabled because of kidney stones prior to May of 2014. (Tr. 383). Plaintiff had initially reported that she was seen at Hershey Medical Center ("HMC") in 2012, then indicated she was seen there in 2011, then indicated that she had not been seen there since 2010. (Tr. 437). There is no evidence of any later treatment at HMC. (Tr. 417).

In August of 2011, Plaintiff's mother reported that she had been noncompliant and truant, and Plaintiff indicated that her mother had not taken her to her primary care provider to obtain birth control. (Tr. 499). She exhibited restricted affect and limited insight, and minimized the mood lability described by her mother. (Tr. 499). Plaintiff declined to restart Zoloft and exhibited similar symptoms in September of 2011, and Dr. Medzoyan decreased her GAF to 58. (Tr. 405, 498). By January of 2012, mental status examination was normal, Plaintiff had decided to pursue a GED instead of completing high school, she remained in a relationship with her boyfriend, and Dr. Medzoyan increased her GAF back to 60. (Tr. 401, 496). In March of 2012, her GAF remained at 60, her mental status examination was normal, she was physically active and "getting plenty of physical exercise," and indicated that she wanted to find a job before starting

GED classes. (Tr. 400, 496). In May of 2012, she was "emotionally stable" with normal mental status examination and GAF of 60. (Tr. 441, 494).

Plaintiff submitted several Function Reports in support of her application for benefits. She reported that she suffered from many impairments, including bipolar disorder and schizophrenia. (Tr. 283). She reported her impairments interfered "with daily living skills," had problems with "processing thoughts, basic memory, general decisions, daily living skills, task skills." (Tr. 280). Plaintiff's mother also reported diagnoses for bipolar disorder and schizophrenia, continued to have development delays, sleeps throughout the day, was unable to perform personal care or cook meals for herself alone, difficulty performing chores, an inability to handle money, "no hobbies/interests," "reads at a 5-6 grade level," had no desire to leave the home due to social anxiety, needs parents to accompany her if she leaves the house, did not communicate well with family or friends, problems with memory, focus, and concentration, was using asthma medication every day, "destroy[s] things," and "slow" thought process. (Tr. 252-57). Plaintiff's mother later reported that she was "physically aggressive toward others, anxiety disorder has gotten worse, schizophrenia has gotten worse." (Tr. 270). She reported "temper tantrums" and "developmental problems." (Tr. 271). She reported "difficulty maintaining personal hygiene due to her mental illness…sleeps a lot through the day, no motivation, no interest in any activities." (Tr. 273). She reported, "doesn't accept responsibilities for her actions, she is physically aggressive, verbally aggressive,

cries very easily for no apparent reasons, needs things repeated to her several times." (Tr. 274). Plaintiff's mother's caseworker wrote that Plaintiff was "mentally slow" but that she had "not seen Andrea in years and can't answer most of the questions." (Tr. 267).

On June 7, 2012, Dr. Louis Poloni reviewed Plaintiff's file for her age eighteen redetermination and opined that she was not disabled. (Tr. 421). Dr. Poloni explained that the Function Reports were "overstated" compared to the medical evidence; for instance, the Function Reports indicated that Plaintiff had problems with self-care and hygiene, but the medical records showed that she was neatly groomed at every appointment. (Tr. 433). Dr. Poloni assessed some moderate limitations. (Tr. 419, 431). Dr. Poloni wrote:

> The claimant alleges disability due to attention deficit hyperactivity disorder ["ADHD"], kidney stones, learning disorder ["LD"], emotional problems, anxiety, depression, asthma and astigmatism. The medical evidence establishes a medically determinable impairment of ADHD, LD, OCD and Personality Disorder, [not otherwise specified]. She has completed 10 years of formal education. She hasn't had any recent hospitalizations because of her mental impairment.

> The claimant is incapable of understanding and remembering complex or detailed instructions; however, this would not significantly restrict her ability to function in a work setting. Her basic memory processes are intact. She is capable of working within a work schedule and at a consistent pace. She can make simple decisions. Moreover, she is able to carry out very short and simple instructions. She would be able to maintain regular attendance and be punctual. Additionally, she would not require special supervision in order to sustain a work routine. She could be expected to complete a normal workweek without exacerbation of psychological symptoms. Her frustration tolerance is low. She has a history of distractive behavior. Furthermore, she is self-sufficient. She would be able to make simple decisions. Review of the medical evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks. The limitations resulting from the impairment do not preclude the claimant from

performing the basic mental demands of competitive work on a sustained
basis. There are no restrictions in her abilities in regards to adaptation.

Based on the evidence of record, the claimant's statements are found to be
partially credible.

The claimant is able to meet the basic mental demands of competitive work
on a sustained basis despite the limitations resulting from her impairment.

(Tr. 420).

The relevant period begins in June of 2012. (Tr. 493). In July of 2012, Plaintiff

reported that she had been unable to fill her prescription of Adderall due to insurance

issues when she turned eighteen, but she "denie[d] having any difficulty with focus or

concentration." (Tr. 439, 493). She was unemployed and "hoping to get her drivers

permit." (Tr. 493).  Examination was normal and GAF was 60. (Tr. 493). In September of

2012, Plaintiff reported:

> She never did fill the script for Adderall XR, given at last appointment. She
> has been using up the supply of Seroquel XR and reports sleep disturbance
> (early morning awakening). She states her mood has been fairly even-keeled
> and she denies excessive hand washing or checking. Her father was
> hospitalized at Philhaven for several months this summer…Andrea has not
> yet found work and has not yet gotten her driver's permit. She is still dating
> her paramour, Jason, for about 2 years.

(Tr. 490). Mental status examination indicated "mild" distress and a "paucity of

language" with neat appearance, normal concentration, intact thought association, logical

thought process, appropriate affect, normal gait and movement, calm mood, no

impairment of thought content, orientation, fair insight and judgment, intact memory,

alertness, cooperative attitude, appropriate manner, intact decision making capacity and

reality testing, and was a reliable informant. (Tr. 492). GAF remained at 60 and Dr. Medzoyan instructed Plaintiff to resume her medication regimen of Adderall and Seroquel. (Tr. 492). In December of 2012, Plaintiff reported "stable mood" and a "stable relationship" with her boyfriend. (Tr. 486). She "hope[d] to get her drivers permit soon" and was "unemployed and [did] not seem motivated to find work." (Tr. 486). Plaintiff's medications included only Seroquel. (Tr. 486). She did "not feel the need to resume Adderall at [that] time." (Tr. 487). Mental status examination was unchanged. (Tr. 488).

In August of 2012, Dr. Mark Hite, Ed.D, reviewed Plaintiff's file an authored an opinion that she was not disabled, writing:

> The claimant alleges disability due to speech delay, feeding delay and hyper. The medical evidence establishes a medically determinable impairment of ADHD, ODD, Gaf60. She is 18 years old. She hasn't had any hospitalizations because of her mental impairment. Claimant receives [outpatient] psych [treatment] from Pa Counseling with K. Medzoyan, MD (psych) and is prescribed meds that are helpful. Recent [outpatient] notes indicate consistently appropriate attention to dress/grooming, hygiene. Claimant reports (6/19/12) that she is seeking employment and may have found work, but, as of 8//1/12, she still is unemployed. [Mental status examinations] are consistently within normal limits despite being off meds due to insurance issues; samples give 8/1/12; no difficulty with focus or concentration; calm; polite; cooperative; thought processes logical goal-directed; fair impulse control; no [suicidal ideation/homicidal ideation].
>
> The claimant's basic memory processes are intact. She can perform simple, routine, repetitive work in a stable environment. She can understand, retain, and follow simple job instructions, i.e., perform one and two step tasks. She can make simple decisions. Moreover, she is able to maintain concentration and attention for extended periods of time. She could be expected to complete a normal workday without exacerbation of psychological symptoms. Her [activities of daily living] and social skills are functional.

> She retains the ability to perform repetitive work activities without constant supervision. There are no restrictions in her abilities in regards to adaptation.
>
> Based on the evidence of record, the claimant's statements are found to be partially credible.
>
> The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment.

(Tr. 465). Dr. Hite opined that Plaintiff had some moderate limitations in interacting with others and handling detailed instructions, but no other significant limitations. (Tr. 463-64).

Plaintiff continued treating with Dr. Medzoyan in January, March, and May of 2013. (Tr. 474-85). Mental status examination was unchanged, except that by May of 2013, she was in "no apparent distress," as opposed to "mild" distress. (Tr. 475, 480, 483). GAF remained at 60. (Tr. 474, 478, 482). In January, she was trying to find employment and obtain her drivers permit, and in May, she was "sedentary in that she is not actively seeking employment nor pursuing driving." (Tr. 474). She continued dating her boyfriend and was hoping that he would propose soon and that they would get an apartment together. (Tr. 474). She "denie[d] obsessions, compulsions, rituals," and "denie[d] feeling depressed or anxious." (Tr. 474, 482). She reported being "even-keeled in her moods" and "feeling stable." (Tr. 478, 482). She was taking only Seroquel. (Tr. 474, 478, 482). After May of 2013, Plaintiff stopped attending medication management sessions and she was discharged in January of 2014. (Tr. 471). None of these records

document any complaints with physical impairments like asthma or kidney stones. (Tr. 474-86).

In April of 2013, Plaintiff's mother contacted the state agency and "was upset that there [was] going to be a hearing." (Tr. 469). She wanted to go to the hearing without Plaintiff, but the state agency employee explained that she would "need to be present," and Plaintiff's mother responded that they "would come." (Tr. 469).

In April of 2014, Plaintiff presented for an initial evaluation at PCS with Lauren Anderson. (Tr. 470). She was "trying to find work." (Tr. 470). "It appear[ed] as though a lot of her symptoms are being exacerbated by her recent legal issues and jail time." (Tr. 470). There is no evidence of any other treatment during the relevant period, or evidence that Plaintiff followed-up at PCS. Doc. 16. Plaintiff indicated to the Appeals Council that her criminal charges were retail theft, conspiracy to commit retail theft, use and possession of drug paraphernalia, intentional possession of a controlled substance, and manufacturing/distributing a designer drug. (Tr. 377).

Plaintiff had previously reported transportation problems and was allowed additional time to appear at the hearing. (Tr. 111). Plaintiff then appeared at a hearing but indicated that her attorney was not there. (Tr. 58). Plaintiff did not show up for her next hearing. (Tr. 201). Her attorney stated, 'I had spoken to Ms. Jacobs' mother last week and she told me that her daughter would be here, so I'd have to say yes, I did expect them to. But, we tried to reach out this morning. We have a number, Your Honor, it just rings and

rings. So, at this point, I know this has been listed three times already, I think, maybe four. And, you know, I regret the inconvenience to you. So, all I can say is I'm here." (Tr. 49). She was offered an opportunity to explain her absence, but instead only wrote that her attorney should have done a better job representing her at the hearing. (Tr. 201, 355). However, Plaintiff's presence was required. (Tr. 469). Her attorney was not able to advocate for her because she was not present. (Tr. 469). Plaintiff has not identified any good cause for failing to attend the hearing.

Plaintiff then submitted various documents to the Appeals Council containing allegations that she was disabled, would always be disabled, needed her mother to make phone calls for her, had difficulty being around others, had difficulty being in public. (Tr. 355-58). Because Plaintiff is *pro se*, the Court considered the allegations Plaintiff made to the Appeals Council together with the allegations she made in her briefs before the Court. *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), *as amended* (Sept. 19, 2011) ( quoting *United States v. Miller,* 197 F.3d 644, 648 (3d Cir.1999); *Zilich v. Lucht,* 981 F.2d 694, 694 (3d Cir.1992)).

## V.    Plaintiff Allegations of Error

### A.    Residual Functional Capacity

The ALJ found that Plaintiff could not perform detailed, complex work because of limitations caused by medical impairments. (Tr. 28-46).   The ALJ found that Plaintiff remained able to perform simple, unskilled work after accommodating the limitations her

medical impairments caused. (Tr. 28-46). If substantial evidence supports the ALJ's RFC for simple, unskilled work, the Court must uphold the denial of benefits, because a VE testified that simple, unskilled jobs existed in the economy. (Tr. 47-52).

Medical experts reviewing Plaintiff's medical records opined that she could not perform complicated work, but could perform simple work. (Tr. 420, 465). The ALJ relied on these medical experts to craft the RFC. (Tr. 28-46). Plaintiff's claims in her function reports and briefs contradict the medical experts. (Tr. 252-57, 270). However, the ALJ is not required to accept Plaintiff's claims as true. *See* SSR 96-7p. The ALJ found that Plaintiff's testimony was not fully credible because it was contradicted by the medical experts, by the medical records, and her conservative treatment, with no hospitalizations between June of 2012 and May of 2014, only occasional outpatient treatment, and a declining dose of psychiatric medications. (Tr. 28-46).

Plaintiff writes that she suffers from various diagnoses, specifically "ADHD, ODD, Neurodevelopment Delay, Learning/Emotional Disabilities, Bipolar Disorder, Anxiety Disorder, Personality Disorder, Mood Disorder, Slow Learner, Renal [Disorder], Depression, Schizoaffective Disorder, Stress, [and] Asthma." Doc. 17, pp.3. Diagnoses do not establish entitlement to disability benefits. *See Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) (There is no "presumption that a mere diagnosis…renders an applicant eligible for benefits under the Social Security Act"). Moreover, while Plaintiff and her mother reported diagnoses of bipolar disorder and schizophrenia, and that her

schizophrenia was worsening, none of the medical providers diagnosed her with these conditions during the relevant period. (Tr. 252-57, 270, 283); Doc. 20, pp. 11. She was diagnosed with learning disorders "by history," but providers observed no intellectual abnormalities. *Supra*.  Plaintiff observed that she had disabilities "at birth," and alleges they continue to the "present." Doc. 17, pp. 2. Plaintiff alleges that she will "always" have developmental delays. Doc. 20, pp. 10. However, the record supports the agency determination that Plaintiff recovered from her disability as she got older, functioning consistent with her chronological age by eighth grade with an average IQ. (Tr. 303, 310).

Other claims Plaintiff or her mother made in support of her application to get disability benefits are contradicted by the claims and observations in the medical records. SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record"). They reported her impairments caused problems with "processing thoughts" and "basic memory," but her medical providers observed that her thought process and memory were normal.  (Tr. 252-57, 280, 441, 475, 480, 483, 488, 492-94, 513). Plaintiff's mother reported problems with focus and concentration, but Plaintiff "denie[d] having any difficulty with focus or concentration" to treatment providers. (Tr. 252-57, 439, 493). As Dr. Poloni noted, both claimed that she had problems with personal hygiene, but providers observed no hygiene issues. (Tr. 420).

Plaintiff's mother reported that she was reading at a fifth grade level, but her IEP noted that she read at a ninth grade level. (Tr. 252-57, 333). Plaintiff's mother reported that she had "no hobbies/interests," but medical providers noted that Plaintiff was physically active and "getting plenty of physical exercise," "playing basketball," and was "into sports" and "running daily." (Tr. 514-15, 521). Plaintiff and her mother reported that she used asthma medication daily, but she had reported to her primary care physician that she used it less than twice a week, and had been instructed to call if she needed it more than twice per week. (Tr. 252-57, 397).

Plaintiff and her mother reported that Plaintiff could not leave the house unaccompanied, had problems communicating with family and friends, and suffered from social anxiety. (Tr. 252-57, 270). Plaintiff's briefs state that she "had difficulty maintaining friendships/making friends." Doc. 20, pp.7. However, while teachers observed some issues with disruption in her classes, they noted that she "fits in socially" and had "many friends," while her doctors observed that she reported "good social skills" with "a lot of friends," had a boyfriend and was getting along with her family, "gets along with peers and gets along with parents and siblings," a "stable relationship" with her boyfriend, and continued dating her boyfriend and was hoping that he would propose soon and that they would get an apartment together. (Tr. 252-57, 332, 340, 396, 474, 486, 510, 521). Plaintiff and her mother reported aggression, anger, and temper tantrums, but medical records show she reported "no behavior problems," "no anger incidents,"

"generally happy and content." (Tr. 252-57, 270, 396, 514-15). Both alleged anxiety, depression, and mood swings, but medical records show she was "feeling great" (Tr. 520), "doing great," (Tr. 517), "denies depression" (Tr. 396),"emotionally stable" (Tr. 441, 494), "mood has been fairly even-keeled"  (Tr. 490), "stable mood" (Tr. 486), "even-keeled in her moods" and "feeling stable."  (Tr. 478, 482), and "denie[d] feeling depressed or anxious." (Tr. 474, 482).

The ALJ properly relied on the claims Plaintiff made to medical providers, instead of the claims she made in support of her application for benefits. *See* SSR 96-7p. The ALJ properly found that Plaintiff was less than fully credible because she made conflicting statements. *See* SSR 96-7p. The ALJ was allowed to rely on the medical experts, instead of Plaintiff's testimony, because doing so was reasonable. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Plaintiff writes that there was a "lack of experts," but the ALJ supported the denial with ample expert evidence. Doc. 20, pp. 3.

Plaintiff cites Elaine Eckert's opinion that she was "mentally slow," but at the time Ms. Eckert completed the statement, she had not seen Plaintiff in "years" and could not address her functional abilities. Doc. 20, pp. 4. Ms. Eckert's Third-Party Function Report does not support Plaintiff's claim for disability. Plaintiff asserts that her mental diagnoses "impairs social and occupation[al] functioning." Doc. 20, pp. 8. The Court agrees, and notes that the ALJ also agreed. The ALJ found that Plaintiff was impaired in occupational functioning. (Tr. 28-46). She was just not so impaired that she was incapable of

performing even the easiest, simplest, unskilled job. *Id.* Impairment alone is not enough. Plaintiff must also prove the extent of impairment, and has not done so here.

The ALJ properly characterized Plaintiff's treatment as conservative. *See* SSR 96-7p. Plaintiff asserts that this was an error because "there are no treatments…no medications" to treat developmental delays or being "slow." Doc. 20, pp. 10. Again, however, testing indicated that Plaintiff's IQ was "average," she was functioning commensurate with her chronological age by eighth grade, and there is no evidence of any provider indicating that she was diagnosed with these disorders during the relevant period. *Supra*. Providers noted that Plaintiff reported a "history" of development delays, but none of the medical records contain any observations that Plaintiff exhibited developmental delays during the relevant period. *Supra*. Plaintiff writes that she was discharged from treatment after May of 2013 for not "showing up for appointment, not because the way the [ALJ] claims." Doc. 20, p. 5. The ALJ is permitted to conclude that Plaintiff is less credible if she stops showing up for treatment. *See* SSR 96-7p. Moreover, at Plaintiff's last visit before she stopped "showing up," her GAF was 60, she continued dating her boyfriend and was hoping that he would propose soon and that they would get an apartment together, "denie[d] obsessions, compulsions, rituals," and "denie[d] feeling depressed or anxious," reported being "even-keeled in her moods" and "feeling stable," and was taking only Seroquel. (Tr. 474, 478, 482). The ALJ reasonably concluded that Plaintiff's failure to obtain any treatment for almost a year during the relevant period

contradicted Plaintiff's claim that her medical conditions rendered her completely disabled. *See* SSR 96-7p.

Even if the Court would have ruled differently, as long as the ALJ was reasonable, the Court must uphold the decision. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). If Plaintiff is capable of performing the easiest, simplest, least demanding job that exists, then she is not disabled, even if she cannot find any job openings at that position. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Disability benefits are only allowed for those who are incapable of working even the easiest, simplest, least demanding jobs, because of medical conditions, if that job were offered to them. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Plaintiff asserts that she was disabled as a child, and will always be disabled, but that is not consistent with the laws and the facts of this case, which show that she was no longer developmentally disabled by eighth grade. Doc. 17, 18, 20, 21, 23; (Tr. 379). The ALJ here reasonably found that Plaintiff could perform simple work between June of 2012 and May of 2014. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

Plaintiff argues that the Defendant has not come up with evidence showing that she is not disabled. Doc. 17, 18, 20, 21, 23; (Tr. 379). First, the Court disagrees. The medical experts, medical records, conflicting statements, and conservative treatment all provide evidence that supports the ALJ's denial. Second, it is not Defendant's job to prove that

Plaintiff is not disabled. Instead, it is Plaintiff's job to prove that she is disabled. 42 U.S.C. § 1382c.

Aside from her testimony, there is essentially no evidence in the record from June of 2012 to May of 2014 that supports her allegation that she was disabled. Her diagnoses alone do not demonstrate that she is disabled, because many individuals are able to work despite attention deficit-hyperactivity disorder, obsessive-compulsive disorder, learning disorder, and personality disorder. *See Talbot v. Astrue*, No. 2:09CV109-KS-MTP, 2010 WL 4615508, at *8 (S.D. Miss. Nov. 4, 2010) (Claimant was not disabled despite diagnoses of ADHD, OCD, learning disorder, and personality disorder); *Young v. Comm'r of Soc. Sec.*, No. 1:10 CV 2900, 2012 WL 4505850, at *9 (N.D. Ohio Sept. 28, 2012) (Claimant was not disabled despite "OCD traits, generalized anxiety, rule out oppositional defiant disorder (ODD) and ADHD, inattentive disorder," along with a "learning disorder" and "personality disorder"); *Graves v. Astrue*, No. 11-CV-6519 MAT, 2012 WL 4754740, at *1 (W.D.N.Y. Oct. 4, 2012) (Claimant was not disabled despite "anxiety, depression, attention deficit hyperactivity disorder ("ADHD"), and a learning disability" along with "OCD" ); *See Neumann v. Astrue*, No. CV-12-08100-PCT-NVW, 2013 WL 491983, at *1 (D. Ariz. Feb. 8, 2013) (Claimant was not disabled despite "obsessive-compulsive disorder, attention deficit hyperactivity disorder, and learning disabilities" and "Asperger's syndrome and anxiety disorder").

A reasonable person could find that Plaintiff's claims made in support of her application were not fully credible and that she retained the capacity to perform simple work. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court does not recommend remand.

## B.   Explanation Provided

Plaintiff asserts that the ALJ "failed to properly consider the evidence" and did not "look at all the factors" and "issues" in the case. Doc. 18, pp. 2. Plaintiff also contends that the ALJ failed to consider all of the medical records. Doc. 20, pp. 1-2.

The ALJ decision must allow meaningful judicial review. *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 305 (3d Cir. 2013) (Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."); *Hur v. Comm'r Soc Sec.*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record"). As the Court explains above, the ALJ properly considered the various factors in assessing Plaintiff's credibility. *Supra*. Aside from Plaintiff's claims, no evidence supported the functional limitations she alleged. *Supra*. Thus, the ALJ properly and reasonably evaluated the evidence and

concluded that Plaintiff failed to produce evidence that she was disabled. *Supra.* The ALJ reasonably concluded that the medical records for treatment between June of 2012 and May of 2014 contradicted Plaintiff's claims. *Supra.* The Court does not recommend remand for additional explanation.

### C.   Continuation of Benefits

Plaintiff asserts that she should have continued receiving benefits after June 20, 2012 while she appealed her denial. Doc. 17, pp. 1-2; 18, 20, 21, 23; (Tr. 379). Even if this is true, Plaintiff would have had to pay back those benefits once the ALJ properly determined that she was not disabled between June 20, 2012 and May 15, 2014. (Tr. 61-68, 74) ("I understand that, if I lose my appeal, I will be asked to pay this money back"). The issue of continuation of benefits is moot. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 1253, 108 L. Ed. 2d 400 (1990) (Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them, and confines them to resolving real and substantial controversies admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts") (internal quotation omitted). The Court does not recommend remand on these grounds.

### VI.   Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were

supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Here, a reasonable mind might accept the relevant evidence as adequate. The Court would not "direct a verdict" if the issue were before a jury. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).  Accordingly, it is

HEREBY RECOMMENDED:

I.      This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28

U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: March 3, 2017                    _____s/Gerald B. Cohn_____
                                        GERALD B. COHN
                                        UNITED STATES MAGISTRATE JUDGE